**SO ORDERED.**

**SIGNED this 29 day of February, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

SAK DEVELOPMENT, INC.,

    DEBTOR.                                        CASE NO. 07-02215-8-JRL

_____

**ORDER**

This case is before the court on a motion by American Constructors of North Carolina, Inc. ("American") seeking reimbursement under 11 U.S.C. § 506(c) from Paragon Commercial Bank ("Paragon"). The court conducted a hearing on this matter in Wilmington, North Carolina on February 20, 2008.

American seeks reimbursement pursuant to § 506(c) in the amount of $156,330.51 for work performed on the condominium project known as Tara 2. Ordinarily, costs and expenses associated with the preservation or disposition of estate property are paid from the unencumbered assets of the bankruptcy estate rather than from a secured creditor. In re JKJ Chevrolet, Inc., 26 F.3d 481, 483 (4th Cir. 1994). However, an exception under § 506(c) permits a trustee (or a debtor-in-possession) to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of

such claim." 11 U.S.C. § 506(c). "The purpose of this exception is to prevent a windfall to a secured creditor at the expense of the estate." In re JKJ Chevrolet, Inc., 26 F.3d at 483. "The party seeking the surcharge must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor." In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1068 (9th Cir. 2001).

As best as the court can determine, American seeks reimbursement of the following expenses under § 506(c): (1) $40,972.23 in labor and material charges associated with Buildings 20, 21, 22, 23, 24, and 25; (2) $21,131.23, which represents a fifteen percent markup on $140,874.86 in charges paid directly by Paragon for expenses incurred in the general development of Tara 2; (3) $75,739.51 in labor charges incurred in the general development of Tara 2; and (4) $18,487.55 in American's attorney's fees. In support of its § 506(c) claim, American has submitted time sheets, invoices, and other documents detailing expenses incurred in the preservation of Tara 2. In addition, Steven A. Krpata, president of American, testified at the February 20, 2008 hearing regarding these expenses.

After carefully reviewing the evidence submitted, the court finds that American is entitled to § 506(c) expenses in the amount of $61,265.32. Specifically, the court permits reimbursement under § 506(c) for: (1) $40,972.23 in labor and material charges associated with Tara 2, Buildings 20-25; (2) $7,573.95 in labor charges incurred in the general development of Tara 2; and (3) $12,719.14, which represents a fifteen percent markup on staking, paving, lighting, and other general services for the Tara 2 common areas.

First, American has provided satisfactory evidence from which the court can conclude that $40,972.23 in labor charges associated with Tara 2, Buildings 20-25 are compensable under § 506(c). American submitted receipts, bills, and invoices indicating payment of expenses incurred

in the preservation of Buildings 20-25. Based on this documentation and Krpata's testimony regarding the tasks performed at each building, the court concludes that these expenses were reasonable, necessary, and for the benefit of Paragon.

Second, the court finds that American's evidence regarding labor expenses related to the general development of Tara 2 is sufficient only to permit reimbursement in the amount of $7,573.95. This amount, which represents only ten percent of the amount claimed by American, is appropriate because the time entries and hourly rate figures provided by American are insufficient to prove that these expenses are compensable in the full amount under § 506(c). Krpata testified at the February 20, 2008 hearing that this work included paving, curbing, landscaping, lighting, and other general tasks. However, the time sheet entries for Krpata and Frank Duke, who claim to have worked 1,398 of the 1,429.5 spent on this endeavor, are devoid of any specificity regarding the tasks performed. In contrast, the time entries for Eric Thomas and Mark Smallwood related to the general development of Tara 2 include brief descriptions, such as "Clean Parking Lot," "Fire Lane," and "1930-101 Clean." The court is willing to credit that work of this nature was, in fact, completed. However, the court is unwilling to credit these time entries for the full amount sought absent any detail regarding the tasks performed.

Third, the court limits American's claim under § 506(c) for a fifteen percent markup on expenses paid directly by Paragon to $12,719.14. American is entitled to a fifteen percent markup under § 506(c) on $84,244.00 paid to E.R. Lewis Construction Co., $3,500.00 paid to Gary S. Miller & Associates, and $1,050.25 paid to Greenville Utilities. These expenses covered staking, paving, and lighting charges for the common areas of Tara 2. Although these expenses were paid directly by Paragon, American arranged for and supervised the work, and it is therefore entitled to a markup

for these services.  However, American is not entitled to recover a markup under § 506(c) for $8,910.00 paid to Builders Mutual for insurance, $5,903.47 in rent paid by Paragon, $36,883.05 in taxes paid by Paragon, and $4,384.09 in homeowners association dues paid by Paragon.  American provided no supervisory or other services related to these charges, and therefore may not recover a markup on them under § 506(c).

Finally, American is not entitled to reimbursement under § 506(c) for attorney's fees in the amount of $18,487.55.  These fees are not administrative expenses of the debtor, and thus are patently ineligible for reimbursement under § 506(c).  Additionally, American has failed to demonstrate (1) how these fees are attributable to the preservation or disposition of the collateral, and (2) that the services for which the attorney's fees are intended to cover provided a quantifiable benefit to Paragon.  Absent such showings, the court refuses to permit reimbursement of these expenses under § 506(c).

In addition to its objections to reimbursement of specific § 506(c) expenses, Paragon raises three objections to American's general ability to seek § 506(c) expenses.  First, Paragon claims that American lacks standing to seek § 506(c) expenses.  As noted in the court's order of January 22, 2008, bankruptcy courts may only approve creditor derivative suits if, at a minimum, the two part test articulated in In re Commodore Int'l, Ltd., 262 F.3d 96 (2d Cir. 2001) is satisfied.  Under this test, the secured creditor must show that (1) the debtor-in-possession consents to the suit, and (2) the suit is in the best interest of the bankruptcy estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.  Commodore at 100.  The court finds that the debtor's explicit and unequivocal consent, as stated in its January 28, 2008 filing with the court, satisfies the first prong.  With respect to the second prong, Paragon argues that American cannot


show that the creditor derivative suit is in the best interest of the bankruptcy estate. The court disagrees with this assertion because permitting these § 506(c) expenses to be defrayed by Paragon reduces the overall amount of administrative expenses for which the debtor is liable.

Paragon's second general objection is that the expenses sought by American were unnecessary under § 506(c) because the debtor lacked clear equity in Tara 2 and should have abandoned the property rather than incur further administrative expenses. However, the court finds that it was not entirely clear that the debtor lacked equity in Tara 2. At the time of the debtor's bankruptcy filing, Paragon had advanced $5,589,236.00 on Tara 2. Although the appraisal completed contemporaneously with the bankruptcy filing indicated that Tara 2 was worth less than $4.3 million, the debtor's schedules listed Tara 2's value at $6.1 million. In addition, Greg Steele, a client development officer at Paragon, testified that a Raleigh inspection company informed Paragon that the value of the construction roughly equaled the amount that Paragon had loaned the debtor. Finally, it is entirely possible that American's completion of the construction could have increased the property's fair market value to an amount greater than that owed by the debtor.

Paragon's third argument is that any award of § 506(c) expenses should be offset by $250,000.00 to reflect the reduction in purchase price received by Paragon as a result of American's failure to renew certain building permits. However, it is unclear whether American could have extended the permits for two reasons. First, Krpata testified that American anticipated the sale of the property, and that the permits automatically expire at the transfer of ownership of the property. Second, it is speculative that the permits would have been extended at all. As a condition of renewing the permits, American would have been required to certify that construction would begin within a certain period of time and that it had the present ability to complete the job. However,

American knew at that time that it could not, in good faith, make those affirmations because (1) it could not begin construction during the time, and (2) the development was up for sale. Any harm caused by American's asserted failure to renew the building permits is too nebulous to justify an offset to the § 506(c) expenses.

For the foregoing reasons, American Constructors is entitled to recover $61,265.32 in § 506(c) expenses from Paragon.

<div style="text-align:center">**"END OF DOCUMENT"**</div>